**ROESER & PENDLETON, Inc., v. OVERLEES et al.**

No. 995.

Court of Civil Appeals of Texas. Waco.

Dec. 31, 1931.

Rehearing Denied Jan. 29, 1931.

Thompson & Barwise and Hugh B. Smith, all of Fort Worth, for appellant.

McLean, Scott & Sayers, of Fort Worth, for appellees.

BARCUS, J.

Appellant instituted this suit against M. H. Overlees and R. F. Garland to recover possession of certain casing, pipe, and material used in the drilling of an oil well. It alleged that it loaned same to M. H. Overlees, and that thereafter Overlees transferred and assigned one-half thereof to R. F. Garland, and thereafter mortgaged the other undivided one-half interest to said Garland to secure an indebtedness. He alleged the value of said pipe, casing, and material at $3,800. Appellees alleged that M. H. Overlees purchased said material from appellant, and that Garland was an innocent purchaser for value from Overlees of a one-half interest therein, and had a valid mortgage to secure a debt of $11,000 on the other half.

The cause was tried to the court, and resulted in judgment being entered in favor of R. F. Garland for an undivided one-half interest in said property and adjudging that he had a valid mortgage on the other undivided one-half of said property to secure said indebtedness. The trial court filed findings of fact and conclusions of law. There is also a statement of facts in the record.

Appellant's sole contention is that there is no evidence to support the finding of the trial court that it sold the property to Overlees; its contention being that the transaction between it and Overlees amounted to a mere loan and bailment of the personal property in question. The record shows that on March 15, 1926, appellant made a contract with Overlees, under and by the terms of which Overlees assigned to appellant an oil and gas lease on two tracts of land in Shackelford county for the use of sufficient casing necessary to drill a 1,500-foot well, with this proviso: "This (the oil leases) is for the use of this casing and Overlees further agrees to pay for all casing not returned after well is completed." The well was drilled and came in as

a producer. The president of appellant, who handled the transaction, testified that it was contemplated, in event the well being drilled was a producer, that Overlees was to return the equal amount of casing, or its equivalent, that in all trades of this sort, when the casing was put in a well and oil was produced in paying quantities, they had to retain the casing in the well in order to protect it, and that the casing could not therefore be returned, and that it was understood between him and Overlees that, in event the well was a producer, Overlees would return the equivalent of the casing which he had borrowed, or its value in money. After the well came in, appellant wrote a number of letters requesting Overlees to pay for the casing, which was invoiced to him at $3,820.68, the first letter offered in evidence being dated the early part of July, 1926, and at various intervals thereafter appellant wrote Overlees demanding payment therefor. There were a number of letters written Overlees by appellant demanding pay for the casing, and Overlees made repeated replies stating he would pay for same. There was not a suggestion in any of said letters from either party that appellant expected or wantetd Overlees to return said casing. The entire correspondence shows that all parties treated the transaction as a sale, and appellant was demanding payment, and Overlees was trying to pay for same. After the well came in as a producer, Overlees sold an undivided one-half interest therein, including the casing, to R. F. Garland for $15,000 in cash. Later he mortgaged the other undivided one-half interest to Garland to secure an indebtedness which he owed him of something over $11,000. Garland had no information that the casing did not belong to Overlees or that it was not a part of the producing well which he purchased.

We think the facts abundantly support the finding of the trial court that appellee Overlees purchased the casing and was the owner thereof, and that it was the intention of the parties that same should be a sale and that same was treated between appellant and Overlees as a sale of the casing. 23 R. C. L. 1207, lays down the rule: "A usage or custom may be used to interpret the otherwise indeterminate intention of the parties as to whether the transaction is a sale or a bailment."

Again the same authority (page 1209) states: "Where there is no obligation to return the original animals, but the return of an equal number of like value is authorized, the transaction is generally held a sale and not a bailment."

Again the same authority (page 1216) states: "The primary test as to the character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used. * * * It does not matter by what name the parties choose to designate it. That does not determine its character. The courts look beyond mere names, and within, to see the real nature of the agreement and determine from all its provisions taken together, and not from the name that has been given to it by the parties, or from some isolated provision, its legal character and effect."

In Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101, 1107 (par. 12), the Supreme Court, in discussing what constituted a sale and what a bailment, stated: "In general it may be said that if it is manifest from the contract that it was intended title should pass and the price be paid, the transaction constitutes a sale."

Clearly, under the testimony of the president of appellant, it was intended that Overlees could satisfy the demand which it had by returning other casing of equal value to that loaned, or by paying for same. His testimony that, in event a producing well was found, the casing was not to be returned, but was to be paid for, and the fact that the well was a producer, was sufficient to authorize the trial court to find that the transaction amounted to a sale of the casing in controversy.

Appellant's proposition is overruled, and the judgment of the trial court is affirmed.